IN  THE  UNITED  STATES  DISTRICT  COURT
FOR  THE  SOUTHERN  DISTRICT  OF  OHIO
WESTERN  DIVISION  AT  DAYTON

DAWN ELSASS, :

                Case No. 3:12-cv-118

        Plaintiff,

   -vs-                                  District Judge Thomas M. Rose
                                               Magistrate Judge Michael R. Merz

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,

        Defendant. :

# REPORT AND RECOMMENDATIONS

    Plaintiff brought this action pursuant to 42 U.S.C. §405(g) and 42 U.S.C. §1381(c)(3) as it incorporates §405(g), for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

    Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g).  The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision.  The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v. Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence is more than a mere scintilla, but only so much as would be required to

prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988); *николай NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365 (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984). However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner, supra.* If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion. *Elkins v. Secretary of Health and Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423. To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy. 42 U.S.C. §423(d)(2).

To qualify for supplemental security benefits (SSI), a claimant must file an application and be an "eligible individual" as defined in the Social Security Act. 42 U.S.C. §1381a. With respect to the present case, eligibility is dependent upon disability, income, and other financial resources. 42 U.S.C. §1382(a). To establish disability, a claimant must show that the claimant is suffering from a medically determinable physical or mental impairment which can be expected to

result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §1382c(a)(A). A claimant must also show that the impairment precludes performance of the claimant's former job or any other substantial gainful work which exists in the national economy in significant numbers. 42 U.S.C. §1382c(a)(3)(B). Regardless of the actual or alleged onset of disability, an SSI claimant is not entitled to SSI benefits prior to the date that the claimant files an SSI application. *See,* 20 C.F.R. §416.335.

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520. First, if the claimant is currently engaged in substantial gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1 (1990). If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed applications for SSD and SSI on September 18, 2009, alleging disability from March 22, 2008, due to extremely severe anxiety and panic attacks and carpal tunnel. PageID 191-93; 188-90; 221. The Commissioner denied Plaintiff's applications initially and on reconsideration. PageID 126-29; 130-32; 135-37; 138-40. Administrative Law Judge Paul

Armstrong held a hearing, (PageID 88-119), and subsequently determined that Plaintiff is not disabled. PageID 68-87. The Appeals Council denied Plaintiff's request for review, (PageID 49-51), and Judge Armstrong's decision became the Commissioner's final decision. See *Kyle v. Commissioner of Social Security,* 609 F.3d 847, 854 (6th Cir. 2010).

In determining that Plaintiff is not disabled, Judge Armstrong found that Plaintiff has severe bilateral carpal tunnel syndrome (status post August 2010 right carpal tunnel release), depression, and anxiety disorder, but that she does not have an impairment or combination of impairments that meets or equals the Listings. PageID 70, ¶ 3; PageID 71, ¶ 4. Judge Armstrong then found that Plaintiff has the residual functional capacity to perform a full range of simple, unskilled work at all exertional levels but that she is incapable of performing repetitive manipulative or forceful gripping work bilaterally and that she is limited to work requiring no more than superficial contact with supervisors, coworkers, and the general public. PageID 74, ¶ 5. Judge Armstrong then used section 204.00 of the Grid as a framework for deciding, coupled with a vocational expert's (VE) testimony, and concluded that there is a significant number of jobs in the economy that Plaintiff is capable of performing. PageID 81, ¶ 10. Judge Armstrong concluded that Plaintiff is not disabled and therefore not entitled to benefits under the Act. PageID 82.

The record contains Plaintiff's treatment notes from treating psychologist Dr. Prediery dated September 13, 2003, to March 10, 2004. PageID 371-85. Those records reveal that when she first evaluated Plaintiff, Dr. Prediery identified Plaintiff's diagnoses as panic disorder without agoraphobia, adjustment disorder with depressed mood, and cannabis abuse; she assigned Plaintiff a GAF of 60. *Id.* Those records also reveal that over time Dr. Prediery noted that Plaintiff had family conflicts, conflicts with co-workers, changed jobs, was disappointed she did not get a promotion, was considering changing careers, and was taking the medication that her family physician prescribed. *Id.*

The record contains Plaintiff's treatment notes from Dr. Myers dated August 23, 2007, through February 14, 2011. PageID 312-24; 446-82. Those notes reveal that Dr. Myers treated Plaintiff for various conditions and complaints including carpal tunnel, panic attacks, anxiety, contact dermatitis, migraine cephalgia, obsessive compulsive disorder, insomnia, acute bronchitis, sinusitis, rib cage region somatic dysfunction, and solar uticaria. *Id.* On August 4, 2011, Dr. Myers reported that Plaintiff had a moderate restriction of activities of daily living, extreme difficulties in maintaining social functioning, deficiencies of concentration, repeated episodes of deterioration or decompensation, and a complete inability to function outside her home due to panic attacks. PageID 483-85. Dr. Myers also reported that Plaintiff was not significantly to moderately to markedly to extremely impaired in her abilities to perform various work-related activities, and that she (Dr. Myers) agreed with examining psychologist Dr. Kramer's findings. *Id.*

The record contains a copy of treating psychologist Dr. Jones' office notes dated April 21, to June 15, 2009.  PageID 442-44. Those notes reveal that Plaintiff received treatment from Dr. Jones on two occasions. *Id.* Dr. Jones reported on December 15, 2009, that she first saw Plaintiff on April 21, 2009, last saw her on June 15, 2009, she (Plaintiff) exhibited press of speech, circumstantial thought process, reported a general sadness and malaise, was chronically unhappy, was overly dramatic in her presentation, and was highly agitated. PageID 326-30. Dr. Jones also reported that Plaintiff was oriented, preoccupied with herself, had impaired concentration, her insight and judgment were marginal, and that she (Dr. Jones) saw Plaintiff on only two occasions. *Id.*

Examining physician Dr. Danopulos reported on December 18, 2009, that Plaintiff presented with bilateral carpal tunnel syndrome and anxiety with panic attacks and depression which she claimed prevented her from working. PageID 331-40. Dr. Danopulos also reported that Plaintiff had a high school education and was "continuing in college (three years)", she

complained of pain in both palms and wrists which radiated to both elbows and further up in addition to numbness in both hands but mostly in the right, on examination both of her hands were painless, her neurological examination was normal, her grip strength was in the upper normal level on both sides but slightly higher on the left although she is right-handed, and that if she had any carpal tunnel it had to be very mild and on the right only. *Id.* Dr. Danopulos noted that Plaintiff behaved hyperactively during the examination, she had previously consulted with a psychologist but did not like him so she discontinued treatment, and that his objective findings were history of bilateral carpal tunnel syndrome which was poorly documented on his examination and history of anxiety with panic attacks and depression with hyperactivity. *Id.* Dr. Danopulos opined that Plaintiff's ability to perform work-related activities was affected in a negative way by her numbness and pain in both palms and wrists, but mainly from her anxiety with panic attacks and hyperactivity. *Id.*

Examining psychologist Dr. Kramer reported on February 12, 2010, that Plaintiff alleged that her main work limitations were due to panic attacks, anxiety, and some agoraphobia, that she claimed she had some social difficulties and was chronically depressed, and that she also suffered from carpal tunnel syndrome and has problems with a nervous stomach. PageID 342-48. Dr. Kramer also reported that Plaintiff graduated from high school, had an associate degree as a paralegal, recently began to take some online classes, has had outpatient counseling off and on throughout her life with the last counseling in July, 2009, was not currently going to counseling, and that her family physician currently prescribed medications for her mental health. *Id.* Dr. Kramer noted that Plaintiff acknowledged that she occasionally smoked marijuana to self-medicate for her anxiety and that she was rather vague in that regard, she was well oriented and in good contact with reality, showed no evidence of any thought disorder, appeared to be of average intelligence, and that her affect did show a significant level of emotional distress. *Id.* Dr.

Kramer also noted that Plaintiff was very tearful, very anxious, agitated, ill at ease, fidgety and restless, and that her speech was rapid and pressured. *Id.* Dr. Kramer noted further that Plaintiff was very spontaneous to the point of being overproductive and pressured in speech, her affect was depressed, she displayed some significant psychomotor agitation and restlessness, displayed no cognitive difficulties, and that she was earning average grades in her online classes. *Id.* Dr. Kramer identified Plaintiff's diagnoses as panic disorder with agoraphobia, generalized anxiety disorder, and recurrent major depression and he assigned her a GAF of 51. *Id.* Dr. Kramer opined that Plaintiff's abilities to relate to others, to maintain attention and concentration, to perform simple repetitive tasks, and to withstand the stress and pressures associated with day-to-day work activities were markedly impaired and her ability to understand, remember, and follow instruction was mildly impaired. *Id.* Dr. Kramer also opined that Plaintiff had the mental ability to perform simple and repetitive tasks that do not involve any significant social interaction or stress or sustained concentration or focus. *Id.*

Plaintiff sought treatment with orthopedic surgeon Dr. Woodard in July, 2010. Dr. Woodard noted that Plaintiff had a significantly positive carpal tunnel compression test and a positive Phalen's test for neuropathy symptoms. PageID 390. Plaintiff underwent a right carpal tunnel release on August 23, 2010, which Dr. Woodard performed. PageID 387-89. On August 31, 2010, Dr. Woodard noted that Plaintiff was doing well. PageID 390.

The record contains Plaintiff's mental health treatment notes from TCN Behavioral Health Services dated August 5, 2010, to August 11, 2011. PageID 397-439; 487-517; 519-21. Those notes reveal that when Plaintiff was first evaluated by a counselor, she reported that she had been struggling with panic and anxiety for about ten years, felt that it was getting worse, had not been leaving her house, and that she used alcohol and marijuana about once a month. *Id.* Plaintiff's diagnoses were identified as social phobia, major depressive disorder, recurrent and moderate, and

rule out post-traumatic stress disorder and she was assigned a GAF of 53. *Id.* Plaintiff was subsequently evaluated by psychiatrist Dr. Houschnecht who reported that Plaintiff was alert and oriented, had an average IQ and fair judgment/insight, admitted to misusing medications and self-medicating, had a stable, tearful affect, good concentration, an intact memory, she was talkative but not pressured. *Id.* Dr. Houschnecht identified Plaintiff's diagnoses as anxiety disorder NOS, post-traumatic stress disorder vs. panic disorder vs. generalized anxiety disorder, and she assigned Plaintiff a GAF of 55. *Id.* Over time, Dr. Houschnecht noted that Plaintiff reported using marijuana once a week, drinking alcohol three days a week consuming up to twenty beers, and that she complained of sweating at night while taking Trazodone. *Id.* In addition, Dr. Houschnecht reported that Plaintiff's condition had improved with medications although she became more depressed and agitated after cheating on her boyfriend, and that she drank six to eight beers on three or four nights a week, *Id.* Plaintiff's counseling notes indicate that Plaintiff's counseling focused primarily on relationships with others, and that at times she discussed with her counselor the possibility to looking for work. *Id.* Plaintiff's treatment notes also reveal that Plaintiff continued to complain of anxiety and insomnia. *Id.*

On August 8, 2011, Dr. Houschnecht reported that Plaintiff had moderate restrictions of activities of daily living, marked difficulties in maintaining social functioning, deficiencies in concentration, repeated episodes of deterioration or decompensation, and that she had a complete inability to function independently outside of her home due to panic attacks. *Id.* Dr. Houschnecht also reported that Plaintiff was moderately to markedly to extremely impaired in her abilities to perform work-related activities. *Id.*

In her Statement of Errors Plaintiff alleges that the Commissioner erred by failing to find that she satisfies Listing 12.06B, by requiring the treating and examining medical sources to produce "objective evidence" of mental impairment, by granting considerable weight to the

reviewing experts' opinions while granting little weight to the treating and examining medical source functional limitation opinions, and by selectively mischaracterizing her daily functional limitations. (Doc. 8).

In support of her first Error, Plaintiff argues that the Commissioner erred by failing to find that she meets or medically equals Listing 12.06B. *Id.* Plaintiff's position is that the record establishes that she "meets at least two of the criteria in 12.06B, specifically B(2), B(3), and B(4)." PageID 537. Plaintiff's argument is focused entirely on the subsection B criteria contained in Listing 12.06. PageID 535-37.

A claimant has the burden of proving that his or her impairments meet or equal the Listings. *Bowen v. Yuckert,* 482 U.S. 319 (1987). In order to meet the requirements of a listed impairment, the claimant must meet all of the elements of the listed impairment. *See, Hale v. Secretary of Health and Human Services,* 816 F.2d 1078, 1083 (6th Cir. 1987), *citing, King v. Heckler,* 742 F.2d 968, 973 (6th Cir. 1984) (lack of evidence indicating the existence of all the requirements of Listing 1.05C provides substantial evidence to support the Secretary's finding that claimant did not meet the Listing). It is not sufficient to come close to meeting the requirements of a Listing. *Dorton v. Heckler,* 789 F.2d 363, 367 (6th Cir. 1989) (Secretary's decision affirmed where medical evidence almost establishes a disability under Listing 4.04(D)).

In addition to satisfying the "paragraph A" criteria of Listing 12.04 and 12.06, an individual must also satisfy either the "paragraph B" or the "paragraph C" of those Listings. 20 C.F.R., Pat. 404, Subpt. P, App. 1 §§ 12.04, 12.06. To satisfy the "paragraph B" criteria, the claimant must have two of the following: (1) marked restrictions of activities of daily living; or (2) marked difficulties in maintaining social functioning; or marked difficulties in maintaining concentration, persistence or pace; or (4) repeated episodes of decompensation each of extended duration. *Id.* To satisfy the "paragraph C" criteria, the individual must have a complete inability

to function independently outside the area of one's home. *Id.*

In determining that Plaintiff does not satisfy Listings 12.04 and 12.06, Judge Armstrong found that Plaintiff did not satisfy the "paragraph B" criteria or the "paragraph C" criteria of those Listings. PageID 71-74. Judge Armstrong did not address the "paragraph A" criteria of either Listing. *Id.* Specifically, with respect to the "paragraph B" criteria, Judge Armstrong found that Plaintiff has mild restrictions in activities of daily living, moderate difficulties in social functioning, moderate difficulties in concentration, and that she had experienced no episodes of decompensation. *Id.*

Plaintiff's argument in support of her first Error is essentially that the Commissioner erred by rejecting her treating sources' opinions as to her abilities to function in those areas identified by the "paragraph B" criteria.

"In assessing the medical evidence supporting a claim for disability benefits, the ALJ must adhere to certain standards." *Blakley v. Commissioner of Social Security,* 581 F.3d 399, 406 (6th Cir. 2009). "One such standard, known as the treating physician rule, requires the ALJ to generally give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians because

> these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone of from reports of individual examinations, such as consultative examinations or brief hospitalizations.

*Id.*, *quoting*, *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544, (6th Cir. 2004), *quoting,* 20 C.F.R. § 404.1527(d)(2).

"The ALJ 'must' give a treating source opinion controlling weight if the treating source opinion is 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'" *Blakley,* 581 F.3d at 406*, quoting, Wilson,* 378 F.3d at 544*.* "On the other hand, a Social Security Ruling[1] explains that '[i]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record.'" *Blakley, supra, quoting,* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *2 (July 2, 1996). "If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley,*582 F.3d at 406*, citing, Wilson,* 378 F.3d at 544*, citing* 20 C.F.R. § 404.1527(d)(2).

"Closely associated with the treating physician rule, the regulations require the ALJ to 'always give good reasons in [the] notice of determination or decision for the weight' given to the claimant's treating source's opinion." *Blakley,* 581 F.3d at 406, *citing,* 20 C.F.R. §404.1527(d)(2). "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Blakley,* 581 F.3d at

---

FN 1. Although Social Security Rulings do not have the same force and effect as statutes or regulations, "[t]hey are binding on all components of the Social Security Administration" and "represent precedent, final opinions and orders and statements of policy" upon which the agency relies in adjudicating cases. 20 C.F.R. § 402.35(b).

11

406-07, *citing,* Soc.Sec.Rule 96-2p, 1996 WL 374188 at *5. "The *Wilson* Court explained the two-fold purpose behind the procedural requirement:

> The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied. *Snell v. Apfel,* 177 F.3d 128, 134 (2nd Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.

*Blakley,* 581 F.3d at 407, *citing, Wilson,* 378 F.3d at 544. "Because the reason-giving requirement exists to ensure that each denied claimant received fair process, the Sixth Circuit has held that an ALJ's 'failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight' given '*denotes a lack of substantial evidence,* even where the conclusion of the ALJ may be justified based upon the record.'" *Blakley, supra, quoting, Rogers v. Commissioner of Social Security.,* 486 F.3d 234, 253 (6th Cir. 2007)(emphasis in original).

The record supports Judge Armstrong's conclusion that Plaintiff is, at worst, mildly restricted in activities of daily living. First, Dr. Kramer reported that Plaintiff cares for her nine year-old and three-year old sons, cares for her cats and dogs, was taking on-line college classes, watches television, performs household chores, cooks, does laundry, shops, drives occasionally, has a boyfriend, plays video games, and helps her nine-year old with his homework. PageID 346. In addition, Plaintiff's treatment notes from TCN Behavioral reveal that at various time she reported she socializes with her friend, does gardening, goes swimming, plays football, plays computer games, and was "staying busy". PageID 397-439; 487-517. Although Dr. Houschnecht

12

and Dr. Myers opined that Plaintiff has moderate restrictions in her activities of daily living, those opinions are inconsistent with Plaintiff's reported activities and Judge Armstrong had an adequate basis for concluding that Plaintiff is, at worst, mildly restricted in her activities of daily living.

Judge Armstrong determined next that Plaintiff has, at worst, moderate difficulties in social functioning. PageID 72-73. As Judge Armstrong noted, the record supports the conclusion that Plaintiff has poor relationships with her family. However, as Judge Armstrong also noted, and as this Court noted above, Plaintiff socializes with her friend, reported "staying busy", cares for her two young sons, has a boyfriend, and engages in various activities. As noted above, Plaintiff also reported to her counselor that she had cheated on her boyfriend indicating that she has socialized outside of her home. For these reasons, as well as for the reasons discussed with respect to Plaintiff's activities of daily living, Judge Armstrong had an adequate basis for rejecting Drs. Houschnecht and Myers' opinions that she has marked/extreme difficulties in maintaining social functioning and for finding, instead, that she has, at worst, moderate difficulties.

Judge Armstrong determined that Plaintiff has moderate difficulties with regard to concentration, persistence, or pace. PageID 73. That conclusion is supported by the record. Specifically, Dr. Kramer reported that Plaintiff was of average intelligence, was a consistent and reliable historian, her verbal and expressive skills were good, she was rather distractible but nevertheless displayed no cognitive difficulties, was able to recall two of three words after a five-minute interval, was able to recall six digits forward and four digits backward, performed well on serial sevens, and that she responded easily to calculation items. PageID 345-46. In addition, as noted, Plaintiff reported taking on-line college courses, played computer games, helped her son with his homework, and performs household chores. For these reasons, as well as for the reasons

13

discussed with respect to Plaintiff's activities of daily living and ability to maintain social functioning, Judge Armstrong had an adequate basis for rejecting Drs. Houschnecht's opinion that Plaintiff has marked difficulties in maintaining social functioning and for finding, instead, that she has, at worst, moderate difficulties.

Next, Judge Armstrong determined that Plaintiff has experienced no episodes of decompensation of extended duration. PageID 74. This Court agrees with that analysis of the evidence. At no time did any of Plaintiff's health care providers report contemporaneously that Plaintiff had experienced an episode of decompensation. Further, Plaintiff has never been hospitalized for treatment of her mental impairment. In addition, as noted above, Plaintiff's counselor indicated that Plaintiff had improved with treatment. Finally, Plaintiff attends counseling every six-weeks and sees Dr. Houschnecht about every six weeks, a treatment regimen that is not consistent with an individual who experiences repeated episodes of deterioration or decompensation. For these reasons, Judge Armstrong had an adequate basis for rejecting Dr. Houschnecht's and Dr. Myers' opinion that Plaintiff experiences repeated episodes of deterioration or decompensation. Moreover, Judge Armstrong did not err by determining that Plaintiff has experienced no episodes of decompensation.

Under these facts, the Commissioner did not err by failing to find that Plaintiff does not satisfy the "paragraph B" criteria of Listing 12.06.

In support of her second Error, Plaintiff argues that the Commissioner erred by requiring the treating and examining medical sources to produce "objective evidence" of mental impairment. However, contrary to Plaintiff's argument, Judge Armstrong did not require the treating and examining sources to provide objective evidence of a mental impairment. Rather,

14

Judge Armstrong noted that Drs. Kramer's, Myers', and Houseknecht's opinions were inconsistent with their notes documenting essentially normal findings. PageID 80. In other words, it was not those sources' failure to report objective findings, but rather the fact that they reported relatively normal findings that Judge Armstrong relied upon in rejecting their conclusions about Plaintiff's abilities to function.

Plaintiff argues next that the Commissioner erred by rejecting her treating sources opinions and instead relying on the reviewing mental health experts' opinions in determining that she is not disabled. However, for the same reasons that the Commissioner did not err by failing to find that Plaintiff satisfies the Listings or by requiring Drs. Kramer, Myers, and Houseknecht to provide objective findings to support their opinions, the Commissioner had adequate bases for rejecting Drs. Kramer's, Myers', and Houseknecht's opinions as to Plaintiff's abilities to perform work-related mental activities.

Plaintiff's final challenge to the Commissioner's decision is that the Commissioner erred by mischaracterizing her daily functional limitations. In support of her position, Plaintiff argues that Judge Armstrong repeatedly emphasized that she was able to perform certain activities but that, "the exhibits cited do not always support his assertions." PageID 543.

A review of the record reveals that Plaintiff does engage in a wide variety of activities. For example, Plaintiff reported to examining psychologist Kramer that she cared for her nine year-old son and her three year-old son, prepared her older son for school, cared for her three year-old all day, fed her cats and dogs, was taking several classes on line earning average grades, spent time on the computer, performed household chores such as doing housework, cooking, laundry, and shopping, she took her children to their various appointments, spent time with her boyfriend,

15

played video games, and that she helped her nine year-old son with his homework. PageID 346. In addition, during the time Plaintiff received mental health treatment at TCN, she reported that she had joined a religious group, met with a financial advisor, was keeping busy with household chores, weaned herself off medications, did the homework her counselor assigned, managed her financial situation with bill collectors, had a boyfriend, watched football games, worked in the garden, was trying to stay active, was using community resources to deal with her foreclosure problem, and was trying to get out of the house at least once a day. PageID 400; 408; 411; 414; 423; 430; 487; 490; 496.   Further, Plaintiff reported to her mental health care providers that she was not interested in working, continued to use marijuana, was doing well, drank to excess, and that she had cheated on her boyfriend. PageID 402; 406; 410; 496; 500.

The issue is, of course, whether there is evidence in the record to support the Commissioner's findings and decision not whether there is evidence to support Plaintiff's allegations of total disability. The above-referenced evidence which is based on what Plaintiff reported to her mental health care providers provided an adequate basis for Judge Armstrong's conclusions about Plaintiff's activities as well as for determining that Plaintiff's activities are inconsistent with allegations of total disability.

The Court's duty on appeal is not to re-weigh the evidence, but to determine whether the decision below is supported by substantial evidence.   *See, Raisor v. Schweiker,* 540 F.Supp. 686 (S.D.Ohio 1982).   The evidence "must do more than create a suspicion of the existence of the fact to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury."   *LeMaster v. Secretary of Health and Human Services,* 802 F.2d 839, 840 (6th Cir. 1986), *quoting, NLRB v.*

*Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939). The Commissioner's decision in this case is supported by such evidence.

It is therefore recommended that the Commissioner's decision that Plaintiff is not disabled be affirmed.

January 9, 2013                                        *s/ Michael R. Merz*
                                                        United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).